IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

APACHE TRIBE OF OKLAHOMA,    )
                                          )
             Plaintiff,         )
                                          )
v.                               )   Case No.  CV-11-1078-D
                                        )
TGS ANADARKO, LLC, *et al.*,    )   (District Court of Caddo County, Oklahoma,
                                        )   Case No. CJ-2011-108)
           Defendants.     )

## O R D E R

Before the Court is Plaintiff's Motion to Remand [Doc. No. 12], filed pursuant to 28 U.S.C. § 1447(c).  Plaintiff Apache Tribe of Oklahoma (the "Tribe") contends this action was improperly removed on the basis of federal question jurisdiction under 28 U.S.C. § 1331, when its pleading raises only questions of state and tribal law.  Defendants have timely responded in opposition to the Motion, which is fully briefed and at issue.

### Factual and Procedural Background

The Tribe filed suit in the District Court of Caddo County, Oklahoma, in August, 2011, seeking declaratory and injunctive relief against Defendants TGS Anadarko, LLC and Wells Fargo Bank, N.A.  The dispute concerns a lease agreement and a lending transaction that provided gaming equipment for the Silver Buffalo Casino, which the Tribe owns and operates.  In its petition, the Tribe asserted that Oklahoma courts had jurisdiction of the dispute under Oklahoma's Declaratory Judgment Act, Okla. Stat. tit. 12, §§ 1651-57, and injunction statutes, *id*. §§ 1381-97.  The issues for decision were framed by the factual allegations of the petition, as summarized below.

The Tribe is a federally recognized Indian tribe governed by a tribal constitution that provides for the supreme governing body to be the tribal council, which consists of all members of

the tribe who are 18 years of age or older.  The constitution also provides for business transactions and tribal matters to be conducted by a five-member business committee, acting within the authority delegated to it by resolutions of the tribal council.  According to the petition, tribal law mandates that only the tribal council can waive sovereign immunity or consent to suit, or delegate the authority to exercise these powers to the business committee, and any delegation of such authority must be done expressly by a resolution of the tribal council.

In December, 2007, the business committee approved and entered into an equipment lease agreement that contained provisions waiving tribal sovereign immunity and requiring arbitration of disputes.  The approval of the lease agreement was done by a resolution of the business committee that purported to act under the authority of two resolutions of the tribal council, which were passed at general council meetings held on August 26, 1972, and September 10, 1977.  Both resolutions delegated to the business committee broad authority to transact tribal business, but neither expressly authorized the business committee to waive sovereign immunity or consent to arbitration.  Also, according to the petition, neither resolution authorized the business committee to enter into a lease agreement for gaming equipment for a casino, since gaming activities were not contemplated in the 1970's.  Because the lease agreement was not approved by the tribal council, and because no resolution of the tribal council delegated authority to the business committee to waive sovereign immunity or agree to arbitration, the Tribe contends these provisions of the lease agreement are invalid or ineffective.  The petition further alleges that Defendants became parties to the lease agreement by assignment in June, 2008, and subsequently claimed that the Tribe had breached the lease.  In May, 2011, Defendants allegedly initiated an arbitration proceeding against the Tribe for breach of the lease agreement, seeking money damages and return of the gaming equipment.

As the Tribe's first claim for relief, the petition asserts that a federally recognized Indian tribe has sovereign immunity from suit as a matter of federal law, and that a tribe can only be sued if Congress has authorized the suit or the tribe has waived its immunity, which waiver must be unequivocally expressed.  The petition also cites Oklahoma case law holding that a state court must look to tribal law to determine whether there has been an effective waiver of immunity or consent to suit by a tribe.  Based on the allegations described above – that the business committee was not authorized by the tribal council to waive sovereign immunity or consent to suit – the Tribe claims there has been no valid waiver, and it requests a declaratory judgment "that the Apache Tribe is not subject to lawsuit or arbitration for any alleged breach of the Equipment Lease Agreement, and that neither a court nor an arbitration forum has subject matter jurisdiction over a suit by TGS Anadarko and Wells Fargo based upon the Equipment Lease Agreement." *See* Petition [Doc. No. 1-1], ¶ 22.[1]

As the second claim for relief, the petition alleges that Defendants have been notified of the Tribe's position that there has been no valid waiver of sovereign immunity or consent to arbitration in accordance with tribal law, but Defendants have asserted that this issue must be decided in the arbitration proceeding.  The Tribe asserts that an arbitral forum does not have subject matter jurisdiction to decide this issue, and questions of subject matter jurisdiction must first be decided by the state court before the Tribe can be compelled to arbitrate Defendants' claims.  Further, the Tribe asserts that "[a] stay of the arbitration proceedings pending [the state court's] determination of this issue is appropriate under Oklahoma law."  *See id.*, ¶ 27 (citing *Oklahoma Oncology & Hematology, P.C. v. U.S. Oncology, Inc.*, 160 P.3d 936 (Okla. 2007)).

---

[1] A copy of the petition also is attached to Plaintiff's Motion as Exhibit A [Doc. No. 12-1].

Based on these claims, the Tribe requests a judgment as follows:

(a) declaring that [the Tribe] has not validly waived its sovereign immunity or consented to suit in the Equipment Lease Agreement, and therefore neither the Court nor an arbitrator has subject matter jurisdiction over the Tribe for a suit brought by TGS Anadarko and/or Wells Fargo; and (b) staying the arbitration proceedings pending this Court's determination of the validity of the waiver of sovereign immunity and consent to suit, and permanently enjoining any suit against the Apache Tribe related to the Equipment Lease Agreement.

*Id*. at p. 12.

As stated above, Defendants removed this case pursuant to 28 U.S.C. § 1441, asserting that federal jurisdiction exists under 28 U.S.C. § 1331. This assertion is based on Defendants' allegation that the Tribe's petition "seeks to resolve the federal question of whether its waiver of sovereign immunity was valid with respect to an Equipment Lease Agreement dated December 27, 2007." *See* Notice of Removal [Doc. No. 1], ¶ 8. Specifically, Defendants contend the Tribe's claim of invalidity of the waiver of sovereign immunity contained in the lease agreement "asserts a claim 'arising under' federal law." *See id*., ¶ 9. According to the Notice of Removal, "whether the Tribe validly waived its sovereign immunity is a matter of federal law, and therefore a federal question under § 1331." *Id*. (citing *National Farmers Union Ins. Co. v. Crow Tribe*, 471 U.S. 845, 850 (1985)).

**Plaintiff's Motion**

By its Motion, the Tribe seeks a remand of this action for lack of federal subject matter jurisdiction. The Tribe argues that an issue of sovereign immunity is insufficient to confer federal jurisdiction, citing *Oklahoma Tax Commission v. Graham*, 489 U.S. 838 (1989). Although *Graham* involved an assertion of tribal sovereign immunity as a defense to a state law claim, rather than an assertion by a plaintiff in a state court action, the Tribe argues that this distinction "does not matter – either way the issue of sovereign immunity is a defense to [Defendants'] state law claims, and does

not provide a basis for removal." *See* Pl.'s Mot. Remand [Doc. No. 12] at 5.  The Tribe relies on the proposition that a suit for declaratory relief, in which the plaintiff merely anticipates a federal defense and seeks a declaration that the defense is invalid, does not necessarily raise a federal question. *See*, *e.g.*, *Public Service Commission v. Wykoff Co.*, 344 U.S. 237, 248 (1952) ("Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal question jurisdiction.").  Here, the Tribe argues that it is merely seeking by its action to establish a defense to state law claims, which does not create federal question jurisdiction.  Further, the Tribe argues that, in the context of this case, its action raises a question regarding a waiver of sovereign immunity that is not governed by federal law.  It contends the issue presented to the state court – whether there has been a valid waiver – will be determined by looking to tribal law, under the Oklahoma Supreme Court's pronouncement in *Dilliner v. Seneca Cayuga Tribe*, 258 P.3d 516 (Okla. 2011).

### Standard of Decision

Under § 1441, "[o]nly state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see Topeka Housing Authority v. Johnson* 404 F. 3d 1245, 1247 (10th Cir. 2005).  A removing defendant has the burden to establish that federal jurisdiction exists. *See Karnes v. Boeing Co.*, 335 F.3d 1189, 1193 (10th Cir. 2003); *see also McPhail v. Deere & Co.*, 529 F.3d 947, 954 (10th Cir. 2008).  "'Since federal courts are courts of limited jurisdiction, we presume no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction.'" *Id*. at 1194 (quoting *United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir.1999)).

For federal-question removability, the existence of jurisdiction is governed by the "well-pleaded complaint rule," under which "a complaint must on its face present a federal claim." *Oklahoma Tax Commission v. Graham*, 489 U.S. 838, 840 (1989); *see Caterpillar*, 482 U.S. at 392. In *Graham*, a defense of tribal sovereign immunity in an action to collect unpaid state taxes from the Chickasaw Nation was insufficient because "the existence of a federal immunity to the claims asserted does not convert a suit otherwise arising under state law into one which, in the statutory sense, arises under federal law." *Id.* at 841. Under the well-pleaded complaint rule, "the plaintiff is considered the 'master of the claim,'" and "may choose to have his claims heard in state court by avoiding claims based on federal law." *Karnes*, 335 F.3d at 1192-93; *see Caterpillar*, 482 U.S. at 392. Under these circumstances, "a defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated." *Caterpillar*, 482 U.S. at 399 (emphasis and footnote omitted); *see Karnes*, 335 F.3d at 1193.

The well-pleaded complaint rule operates differently in a declaratory judgment action. The remedy of a declaratory judgment is "procedural only" and does not extend the jurisdiction of federal courts; thus, if a declaratory judgment action raises a federal question that would arise only as a defense to a state law claim, federal jurisdiction is lacking. *See Skelly Oil Co. v. Phillips Petrol. Co.*, 339 U.S. 667, 671, 673-74 (1950). The Supreme Court squarely held in *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 18-19 (1983), that "federal courts do not have original jurisdiction, nor do they acquire jurisdiction on removal, when a federal question is presented by a complaint for a state declaratory judgment, but *Skelly Oil* would bar jurisdiction if the plaintiff had sought a federal declaratory judgment."

**Discussion**

"As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *Kiowa Tribe v. Mfg. Techs., Inc*., 523 U.S. 751, 754 (1998).   Federal common law requires a "clear waiver" by the tribe of its sovereign immunity.  *See Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 509 (1991); *see also Santa Clara Pueblo v. Martinez* 436 U.S. 49, 59 (1978) ("a waiver of sovereign immunity cannot be implied but must be unequivocally expressed") (internal quotation omitted). Thus, for example, a waiver of immunity from countersuit cannot be implied from the fact that a tribe has filed an action for injunctive relief.  *See Okla. Tax Comm'n*, 498 U.S. at 509-10.  Federal courts have considered, as a matter of federal common law, whether a particular agreement between a tribe and others contained a clear waiver of sovereign immunity.  *See*, *e.g.*, *Nanomantube v. Kickapoo Tribe*, 631 F.3d 1150, 1153 (10th Cir. 2011).  The Supreme Court has held that the requisite clarity may be found in the plain language of a written contract entered into by a tribe that includes choice-of-law and arbitration provisions.  *See C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe*, 532 U.S. 411, 418-19 (2001).

In this case, the Tribe's pleading presents the questions of whether the equipment lease agreement entered into by its business committee operated as a valid waiver of tribal immunity and agreement to arbitrate disputes, and whether the arbitration proceeding should be stayed to prevent the arbitrator from deciding an allegedly jurisdictional issue (the validity of the waiver).  Defendants assert that the Tribe plainly acknowledges, on the face of its state-court petition, that federal law governs the validity of its waiver.  Notably, however, the Tribe's claim of invalidity is not based on any lack of clarity in the lease agreement but, instead, rests on the alleged ineffectiveness of the

waiver under tribal law due to the business committee's lack of authority to enter into the contract. The Tribe's request for declaratory relief is based on the proposition that the requirements of Apache tribal law were not met.  *See* Petition [Doc. No. 1-1], ¶ 22 ("Because there is no valid wavier of sovereign immunity or consent to lawsuit under Apache tribal law," the proposed declaratory judgment should be entered.).  Further, the Tribe's quest for injunctive relief is based on a state-law proposition that the Tribe cannot be required to proceed with arbitration of a threshold issue affecting the arbitrator's authority to decide the dispute.  *See id.* ¶¶ 26-27 (citing *Oklahoma Oncology & Hematology P.C. v. US Oncology, Inc*., 160 P.3d 936, 946 (Okla. 2007), which held: "[T]he existence of an arbitration agreement presents a gateway question about whether the parties are bound by a given arbitration clause and raises a 'question of arbitrability' for a court to decide."). In short, the Tribe rests its grounds for relief on tribal and state laws.

Defendants argue in opposition to remand that the question of whether a tribe has validly waived its immunity is always a question of federal law, even though "a tribe's internal requirements for waiver of immunity may inform the analysis of whether the tribe's waiver was sufficiently clear to satisfy federal law."  *See* Def.'s Resp. Br. [Doc. No. 16] at 5-6 (discussing the state court decision on which Plaintiff relies, *Dilliner*, and other state and federal cases that have considered tribal law in deciding the validity of particular waivers).  However, this argument is insufficient to overcome the holding of *Franchise Tax Board*, that a declaratory judgment complaint that raises only a federal law issue by way of defense to a state law claim, does not "arise under" federal law, and federal jurisdiction is lacking.

Defendants seek to avoid this obstacle to jurisdiction by arguing, first, that Defendants' claims also present a federal question regarding tribal sovereign immunity.  This is so, Defendants

argue, because "[w]hether the Tribe validly waived sovereign immunity is a claim arising under federal law that [Defendants] must prove in their breach-of-contract claim against the Tribe." *See* Defs.' Resp. Br. [Doc. No. 16] at 7. In support of this argument, Defendants provide their "Amended Statement of Claim" in the arbitration proceeding, in which they allege that Plaintiff agreed to arbitrate all disputes and validly waived its sovereign immunity with respect to the lease agreement. Defendants' argument reflects an insufficient legal analysis of federal "arising under" jurisdiction.

The court of appeals has explained § 1331 jurisdiction as follows:

> [T]o find jurisdiction under 28 U.S.C. § 1331, two conditions must be satisfied. First, a question of federal law must appear on the face of plaintiff's well-pleaded complaint. Second, plaintiff's cause of action must either be (1) created by federal law, or (2) if it is a state-created cause of action, "its resolution must necessarily turn on a substantial question of federal law." "A court examining whether a case turns on a [substantial] question of federal law [must] focus on whether Congress evidenced an intent to provide a federal forum."

> \*    \*    \*

> "[W]hether a claim 'arises under' federal law must be determined by reference to the 'well-pleaded complaint.'" It is well settled that "[a] defense that raises a federal question is inadequate to confer federal jurisdiction." Federal-question jurisdiction is not present "even if the [federal] defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case."

> \*    \*    \*

> The "vast majority" of federal-question jurisdiction cases fall within Justice Holmes' statement that a "'suit arises under the law that creates the cause of action.'" Federal-question jurisdiction also exists, however, where "it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims." But the "mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." In considering whether a substantial federal question exists, we must exercise "prudence and restraint." After *Merrell Dow* [*Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804 (1986)], "[a] court examining whether a case turns on a [substantial] question of

9

> federal law should focus on whether Congress evidenced an intent to provide a
> federal forum."

*Nicodemus v. Union Pacific Corp.*, 318 F.3d 1231, 1235-36 (10th Cir. 2003) (footnotes and citations

omitted).  In *Nicodemus*, Wyoming landowners asserted numerous common law claims against a

railroad that held federally-granted rights-of-way over their land.  The court of appeals affirmed a

dismissal for lack of jurisdiction, finding 1) a considerable federal interest at stake but no

congressional intent to provide a federal forum, 2) the plaintiffs' causes of action involved subjects

traditionally relegated to state law, 3) the plaintiffs' requests for declaratory relief merely sought to

establish the scope of rights that the railroad asserted in defense of the action, and 4) the plaintiffs'

request for injunctive relief sought to protect rights granted under state law.  Thus, no jurisdiction

existed under § 1331.

Similarly, in this case, Defendants have asserted common law claims against the Tribe in the

arbitration proceeding for breach of contract and unjust enrichment, and they seek declaratory relief

regarding the parties' rights under the lease agreement pursuant to a state statute, Okla. Stat. tit. 12,

§ 1651.  *See* Defs.' Resp. Br., Ex. 1 [Doc. No. 16-1], at 13-17.  Defendants' causes of action involve

subjects traditionally relegated to state law, and their request for declaratory relief would establish

contractual rights and the applicability of tribal ordinances and gaming regulations to the transaction.

No federal interest in these issues, and no congressional intent to provide a federal forum for their

resolution, is asserted.  Further, no federal-question jurisdiction arises from the fact that Defendants

have anticipated a tribal sovereign immunity defense in pleading their state-law claims in the

arbitration proceeding.  Defendants provide no authority for the proposition, as argued in their brief,

that a waiver of sovereign immunity is an essential element of their breach-of-contract claim.

As an alternative to asserting that the state-law claims asserted against the Tribe involve a federal-law element, Defendants point out that the Tribe's petition also seeks injunctive relief in addition to a declaration of rights.  Defendants contend this affirmative claim "arises under" federal law because the Tribe seeks to enjoin the arbitration proceeding based on an assertion of tribal sovereign immunity.  Upon review of the petition, the Court finds that Defendants overstate the Tribe's claim.  The Tribe asserts, based on rights allegedly conferred by state statutes and Oklahoma decisional law, that it is entitled to a stay of the arbitration pending a judicial determination of the arbitrability of the parties' dispute.  The case law cited by the Tribe as authority for the requested relief, *Oklahoma Oncology & Hematology P.C. v. US Oncology, Inc.*, 160 P.3d 936, 946 (Okla. 2007), relied on the mandate of Okla. Stat. tit. 12, § 1857(B), that "a court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate."[2]  From the Court's reading of the petition, the Tribe's claim for injunctive relief seeks to protect a right allegedly granted by state laws, and to prevent the arbitrator from deciding a question that the Tribe contends it did not agree to arbitrate.  The question of whether the Tribe is entitled to the equitable relief sought by the petition under state law is a matter for state courts to decide.

---

[2] One might question whether the Tribe's cited authorities support the requested relief.  The statute provides that "[if] a party to a judicial proceeding challenges the existence of, or claims that a controversy is not subject to, an agreement to arbitrate, the arbitration proceeding may continue pending final resolution of the issue by the court."  *See* Okla. Stat. tit. 12, § 1857(D).

**Conclusion**

For these reasons, the Court finds that Defendants have failed to establish a basis for federal-question jurisdiction, and that the case should be remanded for lack of federal subject matter jurisdiction.[3]

IT IS THEREFORE ORDERED that Plaintiff's Motion to Remand [Doc. No. 12] is GRANTED.  This case is remanded to the District Court of Caddo County, Oklahoma.

IT IS SO ORDERED this 28th day of September, 2012.


_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

---

[3] The Court notes that the validity of the Tribe's waiver of sovereign immunity may already have been decided in related litigation between the parties, and that the Tribe's petition may have been overcome by subsequent events. An earlier arbitration proceeding regarding a related loan transaction between Wells Fargo and the Tribe has been completed, and an arbitral award against the Tribe has been confirmed by a state district court, despite the Tribe's claim of sovereign immunity.  *See Wells Fargo Bank, N.A. v. Apache Tribe*, Case No. CJ-2011-3545, Order and Judgment (D.C. Okla. County, Okla. Nov. 15, 2011), *appeal pending*, No. 110,194 (Okla.).  The first arbitration also generated additional litigation in this Court, in which a preliminary injunction has been entered that prevents certain tribal leaders, and others acting in concert with them, from taking any official action to adjudicate issues regarding Wells Fargo Bank or "affecting any of its rights or potential remedies under the Loan Agreement, Equipment Lease, or related documents." *See Wells Fargo Bank, N.A. v. Maynahonah*, Case No. CIV-11-648-D, Findings of Fact, Conclusions of Law, and Order (W.D. Okla. Sept. 2, 2011).  Should Wells Fargo Bank believe that tribal leaders are taking actions that are inconsistent with their obligations under the injunction, the All Writs Act, 28 U.S.C. § 1651, is available to preserve this Court's jurisdiction in that case.  *See Commercial Sec. Bank v. Walker Bank & Trust Co.*, 456 F.2d 1352, 1355 (10th Cir. 1972).